## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN BELLA,<br><br>               Plaintiff,<br><br>      v.<br><br>TRANS UNION LLC, EXPERIAN INFORMATION SOLUTIONS INC., EQUIFAX INFORMATION SERVICES LLC, and LVNV FUNDING LLC,<br><br>             Defendants. | **CASE NO.:**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>FCRA, 15 U.S.C. §1681 *et seq*. |

Plaintiff JOHN BELLA ("Plaintiff"), by and through his undersigned attorneys, alleges the following against TRANS UNION LLC ("Trans Union"), EXPERIAN INFORMATION SOLUTIONS INC. ("Experian"), EQUIFAX INFORMATION SERVICES LLC ("Equifax") and LVNV FUNDING LLC ("LVNV") alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681a–x.

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The Act likewise demands that consumers' disputes of inaccurate information be taken seriously by industry players, requiring that they do much more than simply pass information between themselves electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Plaintiff is the victim of what is now a common crime—identity theft. A fraudster used Plaintiff's personal information to open credit accounts with several financial institutions, including, but not limited to, Cross River Bank and Spring Oaks Capital, without Plaintiff's knowledge or consent. Cross River Bank wrote off the account to debt collector LVNV through a series of bills of sale, transfers and assignments involving numerous entities, namely, Best Egg, Sherman Originator LLC and Sherman Originator III LLC, to collect the fraudster's overdue balance.

5. Plaintiff has disputed the fraudulent accounts, asserting the factual truth—the accounts did not belong to him, and he did not authorize them. Yet LVNV continued to press on.

6. LVNV also reported the inaccurate account to the Big Three credit reporting agencies ("CRAs"). Plaintiff disputed the inaccuracies with the CRAs, to no avail.

7. Furnishers of information like LVNV generally have no duties under the FCRA. Once a consumer lodges with the CRA a dispute of information that a furnisher provides, that dispute is transferred to the furnisher. Once it receives the dispute, the furnisher is obligated to reasonably reinvestigate the validity of the dispute. 15 U.S.C. § 1681s-2(b); *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426 (4th Cir. 2004).

8. The FCRA demands of reporting agencies like Trans Union, Equifax and Experian that they utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

9.  Also, when a consumer disputes the accuracy of information with the agencies, they must transmit that dispute to the entity who furnished the information, the furnishers, must then conduct its own, independent investigation of the dispute. *Id.* § 1681s-2(b).

10. Plaintiff brings claims under Section 1681e(b) against all three reporting agencies because they reported about Plaintiff inaccurate information regarding the LVNV account. When Plaintiff disputed the inaccuracies, the agencies did not reasonably investigate, also violating Section 1681i.

11. Plaintiff alleges violations of the FCRA against LVNV and its agents for their failure to conduct a reasonable reinvestigation after receiving notice of a dispute and for their failure to accurately correct and update or delete Plaintiff's information subsequent to receiving notice of Plaintiff's disputes.

12. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017). This is particularly true as to how the CRA Defendants have complied with their now 50-year-old obligation to conduct a meaningful accuracy investigation. The CRA Defendants have been repeatedly sued by consumers, sanctions by regulators and reprimanded by both District and Appellate courts to do more than an automated parroting of what their customer-creditors instruct. Had they followed that advice and heeded those warnings, the Plaintiff would not have been harmed.

## JURISDICTION & VENUE

13. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p) and 28 U.S.C. § 1367.

14. The Plaintiff is a natural person and resident of the State of New York. He is a "consumer" as defined by 15 U.S.C. § 1681 a(c).

15. Defendants transact business in the State of New York. Defendants are registered to conduct business and have appointed registered agents in the State of New York. Therefore, personal jurisdiction is established.

## PARTIES

16. Plaintiff, John Bella, is a natural person residing in Kings County, New York.

17. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

18. Defendant Trans Union LLC is headquartered in Illinois and does business in the State of New York through its registered agent located in Albany, New York.

19. Trans Union is a "credit reporting agency," as defined in 15 U.S.C. § 1681a(f) and it disburses consumer reports to third parties for monetary compensation.

20. Defendant Experian Information Solutions Inc. is headquartered in California and does business in the State of New York through it registered agent located in New York, New York.

21. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

22. Defendant Equifax Information Services LLC is headquartered in Georgia and does business in the State of New York through its registered agent located in Albany, New York.

23. Equifax is a "credit reporting agency," as defined in 15 U.S.C. § 1681a(f) and it

disburses consumer reports to third parties for monetary compensation.

24. Defendant LVNV Funding LLC is a "person," as defined under 15 U.S.C. § 1681a(b) and does business in the State of New York through it registered agent located in Albany, New York. LVNV is also a "furnisher" as defined by the FCRA and caselaw interpreting the statute.

25. Defendants acted through their agents, employees, officers, members, directors, heirs, predecessors, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

26. Defendants are subject to jurisdiction in the State of New York and venue of this District pursuant to New York Long Arm jurisdiction statute through the causation of injury in the state by acts or omissions inside and outside of the State of New York.

## GENERAL FACTUAL ALLEGATIONS

### Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of Trans Union's Creditor-Customers

27. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001)."In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v.*

*Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

28.    "Section 1681e(b) sets forth the CRAs' overall du[t]y:

(b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

29. Section 1681i(a), on the other, hand requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through his dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . .  before the end of the 30-day period[.] 15 U.S.C. § 1681i(a)(1)(A).

30. Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

31. It has long been the law that a CRA, such as Trans Union, Equifax and Experian, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item.  *See, e.g.*, *Pinner v. Schmidt,* 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a

credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11ᵗʰ Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

32. That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir.1997).

33. As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry"). 357 3d 426, 430 (4th Cir. 2004).

34. Further, as the CRA Defendants are aware, this Court has held that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendants has a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed    without    an    adequate    investigation.    Likewise,    Section

1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance. *Burke*, 2011 WL 1085874, at *4.

35. It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.
> Fed. Tr. Comm'n, 40 Years Of Experience with the Fair Credit Reporting Act (July 2011), at 67.[1]

36. Today, furnishers such as LVNV and other of the CRA Defendants' furnishers have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2. But while the CRA Defendants' duties under § 1681e(b) were enacted in 1970 and have governed since, the duties on furnishers are much recent, enacted on in 1996. The Consumer Credit Reporting Reform Act of 1996, Pub. L. No. 104-208 (1996).

### *Plaintiff Discovers the CRA Defendants were Inaccurately Reporting the LVNV Account That Did Not Belong to Him*

37. Plaintiff adopts and realleges the foregoing as fully restated herein.

38. Sometime on or around March 2022, Plaintiff discovered that he was the victim of what is now a common crime—identity theft. A fraudster used Plaintiff's personal information to open credit accounts with several institutions without Plaintiff's knowledge or consent.

---

[1]  Available at https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

39. Upon discovery of the crime, Plaintiff immediately filed a report with his local police department.

40. Plaintiff thought that this was the end of his ordeal, however, it was only the beginning when on or about August 29, 2023, he was sued by LVNV to recover one of the fraudulent debts in the Civil Court of the City of New York, County of Kings, entitled *LVNV Funding LLC v. John Bella*, Index No.: CV-15096-23/KI ("Civil Court Action").

41. Within its Civil Court Action, LVNV claimed that the alleged debt originated with Cross River Bank and was transferred to LVNV via a slew of bills of sale, transfers and assignments that involved other institutions, namely Best Egg, Sherman Originator LLC and Sherman Originator III LLC.

42. Plaintiff has asserted the factual truth to LVNV in the Civil Court Action, that the account and alleged debt he was being sued for was a result of identity theft.

43. The Plaintiff has never opened nor used the LVNV account at all.

44. The Plaintiff has never opened nor used an account originating with Cross River Bank at all.

45. Plaintiff then pulled his Experian, Equifax and Trans Union consumer reports and discovered LVNV reporting a fraudulent account that originated with Cross River Bank, as belonging to the Plaintiff.

46. Upon discovering the inaccurate reporting and fraudulent debt, Plaintiff immediately disputed the inaccuracies with either the actual account holder or the credit reporting bureaus.

*Plaintiff Disputes The Inaccuracies With the CRAs and Furnishers*

47. Having learned that LVNV was inaccurately reporting the status of the account to the Big Three CRAs, Plaintiff sent disputes to Equifax, Experian, and Trans Union to attempt to have them remove the inaccuracies from his credit reports.

48. On or around October 9, 2023 and July 18, 2024, Plaintiff sent correspondence to Trans Union, requesting that Trans Union verify and correct the inaccurate, erroneous and unverified representations made by Best Egg and LVNV on his credit file.

49. Plaintiff's disputes to Trans Union unequivocally stated that he never applied for any loan product with Best Egg, LVNV nor Cross River Bank, and he did not authorize the account.

50. On or about a date unknown to the Plaintiff, Trans Union forwarded Plaintiff's disputes to LVNV or Best Egg, using an electronic system called "e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results back to Trans Union.

51. e-Oscar is also the system by which furnishers like LVNV and Best Egg has agreed they will accept such consumer disputes from Trans Union.

52. Under such circumstances, LVNV and Best Egg became obligated under the FCRA to investigate Plaintiff's disputes.

53. LVNV and Best Egg failed to reasonably reinvestigate Plaintiff's disputes that they received from Trans Union in violation of the FCRA.

54. At the date of this filing, LVNV and Best Egg has failed to reasonably reinvestigate Plaintiff's disputes and have failed to accurately correct and update or delete Plaintiff's information.

55. Subsequent to Plaintiff's disputes, Trans Union failed to remove the inaccurate information contained within Plaintiff's credit report.

56. On or around October 9, 2023 and July 18, 2024, Plaintiff sent correspondence to Experian, requesting that Experian verify and correct the inaccurate, erroneous and unverified representations made by LVNV, or Best Egg on his credit file.

57. Plaintiff's disputes to Experian unequivocally stated that he never applied for any loan product with Best Egg, LVNV nor Cross River Bank, and he did not authorize the account.

58. On or about a date unknown to the Plaintiff, Experian forwarded Plaintiff's disputes to LVNV and Best Egg using an electronic system called "e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results back to Experian.

59. e-Oscar is also the system by which LVNV and Best Egg has agreed they will accept such consumer disputes from Experian.

60. Under such circumstances, LVNV and Best Egg became obligated under the FCRA to investigate Plaintiff's disputes.

61. Best Egg, Sherman Originator or LVNV failed to reasonably reinvestigate Plaintiff's disputes that they received from Experian in violation of the FCRA.

62. At the date of this filing, Best Egg, Sherman Originator or LVNV has failed to reasonably reinvestigate Plaintiff's disputes and have failed to accurately correct and update or delete Plaintiff's information.

63. Subsequent to Plaintiff's disputes, Experian failed to remove the inaccurate information contained within Plaintiff's credit report.

64. On or around October 9, 2023 and July 18, 2024, Plaintiff sent correspondence to Equifax, requesting that Equifax verify and correct the inaccurate, erroneous and unverified representations made by Best Egg, Sherman Originator or LVNV on his credit file.

65. Plaintiff's disputes to Equifax unequivocally stated that he never applied for any loan product with Best Egg, Sherman Originator or LVNV nor Cross River Bank, and he did not authorize the account.

66. On or about a date unknown to the Plaintiff, Equifax forwarded Plaintiff's disputes to Best Egg, Sherman Originator or LVNV using an electronic system called "e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results back to Equifax.

67. e-Oscar is also the system by which Best Egg, Sherman Originator or LVNV has agreed they will accept such consumer disputes from Equifax.

68. Under such circumstances, Best Egg, Sherman Originator and LVNV became obligated under the FCRA to investigate Plaintiff's disputes.

69. Best Egg, Sherman Originator or LVNV failed to reasonably reinvestigate Plaintiff's disputes that they received from Experian in violation of the FCRA.

70. At the date of this filing, Best Egg, Sherman Originator or LVNV has failed to reasonably reinvestigate Plaintiff's disputes and have failed to accurately correct and update or delete Plaintiff's information.

71. Subsequent to Plaintiff's disputes, Equifax failed to remove the inaccurate information contained within Plaintiff's credit report.

72.

### *The CRA Defendants Did Not And Do Not*
### *Conduct Any Investigation Of Most Consumer Disputes*

73. Unknown to the Plaintiffs until this lawsuit, it has long been the practice of both Trans Union and Equifax to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to a third-party outsource vendor located overseas. Both these Defendants use the same vendor, previously known as Intelenet Global Services and now as Teleperformace.

74. It has long been the practice of Experian to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to an affiliated company, Experian Services Chile, S.S. in Santiago, Chile.[2]

75. The CRAs' dispute processing vendor is not hired to perform an actual FCRA investigation. Instead, its sole responsibility is to read consumer dispute letters, select one of a handful of common dispute codes from a drop-down menu and then click that code.

76. In fact, the CRA Defendants strongly encourage consumers to make disputes through their online websites. When consumers do so, the consumer has to click one of just a few available dispute reasons (such as "Not my account."). The online dispute then is outputted into the "e-Oscar" system described below without ever touching human

---

[2] Experian long ago lost the argument that testimony from these dispute agents requires more than a garden-variety Rule 30 notice. *Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 510 (D. Idaho 2013). In recent litigation by Plaintiff's Counsel in the Eastern District of Virginia, *Sublett v. Nissan of Richmond, et al.*, No. 3:20-cv-00156 (E.D. Va.), however, Experian presented the supposed third-party Chilean dispute investigator pursuant to Plaintiff's notice of deposition under Rule 30. To the extent Experian would argue here that it cannot produce the Chilean dispute agents pursuant to a Rule 30 notice, then Plaintiff will pursue her1681i failure-to-investigate claim on the theory that no investigation was conducted by the CRA.

hands or being read by human eyes at Trans Union. It gets sent to Defendants' creditor customer for its sole review and consideration.

77. Here is how it the written mail dispute process actually works: for Equifax, a third party document processing company in Atlanta maintains several Post Office boxes for receiving consumer mail to Equifax such as disputes, requests for a credit file disclosure or other communication. That mailbox company receives consumer disputes, scans them into a batch of other disputes.

78. Both Equifax and Trans Union then forward the dispute mail batches to the same third-party, Teleperformance, based in Mumbai, India. Teleperformance uses low-wage employees to work quickly to process the consumer dispute letters received from the Atlanta-based mail company, skimming the letters and selecting one of a handful of codes from a dropdown menu to best describe the consumer's detailed dispute information in 2 digits. For example, the most common relevant code is: "01 Not his/her."

79. Teleperformance agents are not allowed to do any of these things: contact the consumer; use the telephone or e-mail to investigate; research; contact the furnisher directly; or take longer than 5 minutes per dispute.

80. Equifax and Trans Union have both taken the position in other litigation that they have no control over the Teleperformance. For example, under oath before another court just this year, Equifax's representative employee testified: "Intelenet has no corporate affiliation with Equifax. Intelenet is not a corporate partner of Equifax. Rather, Intelenet is a company wholly separate from Equifax and is a party to a contract with Equifax wherein Equifax hired Intelenet to assist Equifax with various matters. Neither

Mr. Negi nor Mr. Singh [the dispute processing agents] are employees of Equifax." *Miller v. Equifax Info. Serv.*, No. 4:19-cv-584, ECF 47-1 (M.D. Fl. Sept. 18, 2020). And in its briefing in that same case, Equifax argued, "Courts have determined that Intelenet is a separate legal entity, not controlled by a party."

81. Trans Union has taken and succeeded with this same position. *See, e,g., Wilcox v. Servis One, Inc.,* No. 1:19-cv-02545-RDB (D. Md.), ECF 71 (ruling that TransUnion did not have control or the ability to produce for deposition Indian employees of Intelenet).

82. Regardless of whether these statements are correct, both Equifax and Trans Union believe that they cannot direct, control, manage or reliably influence the employees of their third party Indian outsource vendor.

83. Equifax and Trans Union themselves did not conduct any reinvestigation of Plaintiff's many disputes. Instead, they merely caused them to be removed from their control to be saved within a database by an overseas data-processing vendor.

### *Plaintiff Suffered Actual Harm*

84. Defendants have continued to report the erroneous inquiries on the Plaintiff's credit reports, despite being notified that Plaintiff was a victim of identity theft and did not authorize the account.

85. Plaintiff has been attempting to resolve this matter with Defendants for over one year, and his credit has been significantly destroyed by Defendants' failure to correct the inaccurate reporting.

86. As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

a.  Stress associated with multiple denials for personal loans, credit cards, and delays in applying for future lines of credit;

b.  Monies lost by attempting to fix his credit, e.g. communication costs, postage for disputes;

c.  Loss of time attempting to cure the errors;

d.  Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

e.  Stress associated with hundreds of hours attempting to resolve this matter in the last year.

### *Defendants' Conduct Was Willful*

87. The FCRA allows for a remedy for a "willful" violation.  A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007).  A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

88. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418;  *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

89. As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years.  The language of § 1681e(b) has not changed.  The CRA Defendants' dispute investigation obligations under § 1681i(a) have not changed.

The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

90. The CRA Defendants have received many thousands of disputes and other complaints regarding the creditors at issue in this case – sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting.

91. Just in federal court alone, during the last decade the creditor-furnishers disputed by Plaintiff has had to defend collectively over 1,000 consumer lawsuits.

92. In many or even most of these FCRA lawsuits brought by a consumer, one or more of the CRA Defendants was a named co-defendant.

93. The CRA Defendants knew or should have known of this litigation history. They use and have access to PACER to investigate and monitor such consumer complaints.

94. The CFPB has maintained a Consumer Complaint database since 2017. It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many multiples more are made directly to the Defendants, and/or to other government agencies, attorneys, or non-profit organizations.

95. Each Defendant regularly receives unredacted consumer dispute details from this database.

96. Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Equifax.

97. Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Experian.

98. Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Trans Union.

99. Further, more than 33,000 of the CFPB complaints as to Experian, and just shy of 38,000 against Trans Union were based largely on their failure to reasonably investigate consumer disputes.

100. Just in the last 12 months alone, Experian, Equifax, and TransUnion have each been sued on by consumers alleging their violation of the FCRA over 2,000 times. Most of these alleged that the Defendant violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute. This complaint history has been true for nearly every year over the last decade.

101. While the thousands of consumer complaints and hundreds of thousands of consumer disputes alone would have put Defendants on notice of the failures of their dispute investigation procedures in ensuring accuracy, numerous Federal District and Circuit Courts have placed the CRA Defendants on notice that they may not merely "parrot" what their creditor-customer tells them if the consumer had provided a substantive and detailed dispute.

102. Experian and Equifax have had actual notice from numerous other courts that their blind ACDV "parroting" was unlawful. *See, e.g., Centuori v. Experian Info. Sols., Inc.*, 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006) ("'The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources.'"); *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 (3d Cir. 2011); *Pourfard v. Equifax Info. Sols. LLC*, 2010 WL 55446 (D. Or. Jan. 7, 2010) ("[T]he caselaw is clear that a reporting agency does not act reasonably under the FCRA by deferring entirely to another source of information."); *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066, 1073-74 (D. Or. 2011)

("[Equifax] instead utilized an automated dispute system to verify the accuracy of plaintiffs' account. Many courts, including this one, have concluded that where a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation.").

103.    Equifax has even been warned by its home District Court, the Northern District of Georgia, which detailed:

> Equifax argues that the creditor is the party responsible for investigating the dispute, once notified of it by the reporting agency. 15 U.S.C.A. § 1681s-2(b) (1998). According to Equifax, the reporting agency's duty under § 1681i is fulfilled once it forwards the complaint to the creditor, the entity in the best position to undertake an accurate investigation. Under § 1681s-2(b), furnishers of information, such as creditors, have certain duties to investigate consumers' disputes. Yet, this does not end the inquiry, or establish that the reporting agency has no responsibility beyond serving as a conduit for consumers' complaints.
>
> To the contrary, a credit reporting agency does not conduct a reasonable investigation by deferring entirely to another source of information. "In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." *Stevenson*, 987 F.2d at 293. The FCRA "places the burden of investigation squarely on" the reporting agency. *Id.; see also Henson v. CSC Credit Servs.*, 29 F.3d 280, 286-87 (7th Cir. 1994); *Swoager v. Credit Bureau,* 608 F.Supp. 972, 976 (M.D. Fla.1985).

104.    Trans Union has long been on even clearer notice.  The seminal Circuit Court decision addressing § 1681i(a) and finding that a CRA does not conduct a reasonable reinvestigation of a consumer's substantive dispute if it merely "parrots" its creditor-customer was a Trans Union case. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).  Trans Union's notice was so substantial that one District Court instructed the jury in a § 1681i(a) trial:

> In assessing the issue of notice to Trans Union, you are instructed that, on several occasions since 1997, decisions of federal courts have informed . . . that the Fair Credit Reporting Act's Requirement for a reasonable reinvestigation must consist of something more than simply the parroting of information received from other sources and/or that a credit reporting agency does not act reasonably by deferring entirely to another source of information, such as a creditor.

*Mullins v. Equifax Info. Servs., LLC*, CIV. 3:05CV888 (E.D. Va. Aug. 27, 2007)

105.    Defendants have also been repeatedly criticized by Federal and state regulators, and consumer groups for the refusal or failure to conduct substantive reinvestigations.

106.    In 2015, a large group of state Attorneys General forced a consent order from the CRA Defendants by which they were required to develop procedures necessary to comply with the FCRA.[3]  The AG Settlement required amongst many changes and mandates that the Defendant comply with § 1681i(a).

107.    The AG Settlement also required the CRA Defendants to conduct significant research and data gathering – even creating a "working group" to address these issues, and to develop special procedures to handle disputes as in this case.  Notwithstanding these requirements, the Defendants did not meaningfully comply with the AG Settlement in these regards.

108.    Defendants are also aware of substantive and detailed criticism by public interest groups about their automated dispute system.  For example, in 2009, the National Consumer Law Center ("NCLC"), the organization that publishes the leading egal treatise in this field, also published a scathing research paper detailing the actual process followed by Defendants when a consumer makes a dispute.  That report was

---

[3]    *Available at* https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

updated in 2019. AUTOMATED INJUSTICE REDUX *Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors*, National Consumer Law Center, February 2019. ("NCLC Report").[4]

109.    The NCLC Report summarized its context:

Ten years ago, the National Consumer Law Center (NCLC) issued Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports, the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian and TransUnion), and started the difficult task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the credit bureaus in 2015, requiring an array of reforms. Despite these very laudable achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

110.    Among many of the Defendants' accuracy failures, the NCLC Report discovered:

- **Insufficient Information Conveyed and Considered in Investigation**.  Credit bureaus use the highly automated e-OSCAR system to convey disputes to furnishers, primarily using shorthand two- or three-digit codes, and at most only a line or two of text in a minority of instances. The credit bureaus use the same four or five codes over 80% of the time.

- **Failure to Transmit Information Submitted by the Consumer**. Credit bureaus failed to send supporting documentation submitted by consumers to furnishers, in clear violation of the FCRA.

- **Perfunctory Credit Bureau Investigations**. Credit bureaus limit the role of their employees who handle disputes, or of the foreign workers employed by their offshore vendors, to little more than selecting these two or three digit codes. Workers do not examine documents, contact consumers by phone or email, or exercise any form of human discretion in resolving a dispute.

---

[4] *Available at* https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

- **Credit Bureaus Always Side with Furnishers**. Credit bureaus are universally biased in favor of furnishers and against consumers in disputes. In a practice known as "parroting," credit bureaus blindly adopted the response of the furnisher without performing any independent review.

NCLC Report at 6.

111.    Despite the notice and judicial, regulatory and public interest criticism, Defendants have refused to change their dispute investigation process because it would cost too much money to do so.

112.    Defendants' procedures imposed on the Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## CLAIMS FOR RELIEF

### COUNT 1: AGAINST TRANS UNION, EXPERIAN AND EQUIFAX
### Violation of § 1681e(b) of the FCRA

113.    The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

114.    Defendants Trans Union, Experian and Equifax willfully violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files they published and maintained concerning the Plaintiff.

115.    As a result of this conduct, action and inaction of Trans Union, Experian and Equifax, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, the mental and emotional pain and anguish and

the humiliation and embarrassment of having to borrow money and offer explanations for why he lost the ability to benefit from credit.

116.    Further, after the Plaintiff's detailed disputes put them on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of their creditor-customers, Trans Union, Experian and Equifax ignored such information and did not use any human or substantive review to confirm and verify that its procedures were ensuring maximum possible accuracy of the Plaintiff's credit reports.

117.    Each CRA Defendant furnished multiple consumer reports to third parties containing the inaccurate tradeline information and each CRA Defendant did so after receiving notice of these inaccuracies.

118.    Trans Union's, Experian's and Equifax's conduct, action and inaction were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

119.    As a result of Trans Union's, Experian's and Equifax's violations of 15 U.S.C. § 1681e(b), the Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

120.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union, Experian and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT 2: AGAINST TRANS UNION, EXPERIAN AND EQUIFAX
### Violation of § 1681i of the FCRA

121.    The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

122.    In preparing the Plaintiff's credit files, Trans Union, Experian and Equifax did not investigate Plaintiff's claims and instead relied upon verification from a source they have reason to know is unreliable.

123.    Equifax, Experian, and TransUnion each violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from each of the Plaintiffs' credit files.

124.    Further, Trans Union, Experian and Equifax violated Section 1681i by conducting *no investigation at all*. Section 1681i demands that when Plaintiff notified each CRA directly of his disputes, that party—the consumer reporting agency who received the disputes—must investigate those disputes. The statute does not contemplate someone other than Trans Union, Experian and Equifax conducting the investigation.

125.    Yet, both Trans Union and Equifax used an unrelated third-party, Intelenet, over which neither CRA has control to conduct its investigations. Intelenet is not, in the words of the statute, "the [consumer reporting] agency" to whom Plaintiff disputed. Trans Union and Equifax therefore violated 1681i on this basis because they sent Plaintiff's disputes away to a company that was not their controlled agent rather than investigating them as required.

126.    As a result of Trans Union's, Experian's and Equifax's violations of 15 U.S.C. § 1681i, the Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

127.    Trans Union's, Experian's and Equifax's conduct, action, and inaction were willful, rendering each Defendant liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

128.    The Plaintiff is entitled to recover costs and attorneys' fees from Trans Union, Experian and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT 3: AGAINST LVNV
### Violation of § 1681s-2(b)(1)(A) of the FCRA

129.    Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

130.    The FCRA requires that "After receiving notice of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A).

131.    It is evident that LVNV failed to fully conduct a reasonable investigation of the Plaintiff's disputes after said disputes were furnished to LVNV by Experian, Equifax and Trans Union, as required by 15 U.S.C. § 1681s-2(b)(1)(A).

132.    As a result of the above-described violation to §1681s-2(b)(1)(A), Plaintiff has sustained damages including denial of credit, emotional distress, and mental, financial and physical pain.

133.    Defendant LVNV's conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff that are outlined more completely above.

134.    Defendant LVNV's violative conduct was intentional, willful and negligent.

135.    The violations by LVNV were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, LVNV were negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

136.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from LVNV in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT 4: AGAINST LVNV
## Violation of § 1681s-2(b)(1)(E) of the FCRA

137.    Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

138.    Defendant LVNV violated FCRA § 1681s-2(b)(1)(E).

139.    The § 1681s-2(b)(1)(E) of the FCRA provides that if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation, for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly modify that item of information; delete that item of information; or permanently block the reporting of that item of information.

140.    Defendant LVNV failed to accurately correct and update or delete Plaintiff's information for a period of time subsequent to receiving Plaintiff's disputes from Experian, Equifax and Trans Union prior to the commencement of this action any as required by 15 U.S.C. § 1681s-2(b)(1)(E).

141.    As a result of the above-described violation to §1681s-2(b)(1)(E), Plaintiff has sustained damages including denial of credit, emotional distress, and mental, financial and physical pain.

142.    Defendant LVNV's conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff that are outlined more completely above.

143.    Defendant LVNV's violative conduct was intentional, willful and negligent.

144.    The violations by LVNV were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, LVNV was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

145.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from LVNV in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## JURY DEMAND

146.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff John Bella hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff John Bella respectfully requests judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. §1681n(a);

C. Statutory damages pursuant to 15 U.S.C. §1681n(a)(1)(A);

D.  Punitive damages pursuant to 15 U.S.C. §1681n(a)(2);

E.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§1681n(c) and 1681o(b);

F.  Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law;

G.  Specific performance and injunctive relief; and

H.  Any relief that this Court deems appropriate.

Dated: January 29, 2025
     New York, New York

LAW OFFICE OF ABEL L. PIERRE,
ATTORNEY-AT-LAW, P.C.

Attorney I.D.#AP-5508
140 Broadway, 46th Floor
New York, New York 10005
Telephone: (212) 766-3323
Facsimile: (212) 766-3322
Email: abel@apierrelaw.com

*Attorneys for Plaintiff*